UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERWIN LEYBA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:11-CV-198 JD |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Erwin Leyba, a *pro se* prisoner, filed an amended petition pursuant to 28 U.S.C. § 2254 challenging his 1993 drug conviction in St. Joseph County [ECF No 22]. The state argues that Leyba's claims are procedurally defaulted. [ECF No. 27.] For the reasons stated below, the petition is dismissed with prejudice.

I.     BACKGROUND

In deciding the petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Leyba's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals set forth the facts underlying Leyba's conviction as follows:

> During the time of Leyba's crimes and arrest, Michael Grzegorek, a police officer in the St. Joseph County Police Department, was assigned as an undercover narcotics officer to purchase illegal drugs. On or about March 10, 1992, Officer Grzegorek contacted Gary Coleman, a confidential information, to arrange a drug buy from known cocaine dealer Steven Richards. Officer Grzegorek and Coleman had previously purchased cocaine from Richards in January of 1992. Coleman arranged the buy to take place at a local restaurant parking lot. Upon Grzegorek and Coleman's arrival at the designated meeting place, Richards was already there as a passenger in a vehicle driving by Leyba. Grzegorek and Coleman spoke briefly with Richards about the buy money, which Richards had previously told Coleman that he needed in advance of the sale. Leyba then told Grzegorek and Coleman that he and

> Richards would be gone approximately 30 minutes. Grzegorek gave Richards $730, and Leyba told Grzegorek not to worry, "if you don't like it, I can take it back."
>
> Richards and Leyba returned a short time later and delivered the cocaine to Grzegorek and Coleman. Richards told Grzegorek that the cocaine had only cost $720, and attempted to return $10. Grzegorek offered to give the $10 to Richards, to which Richards responded, "No, he's taking care of me, man" referring to Leyba. Both parties then left the area of the transaction. The substance was later transported to the Indiana State Police Laboratory where it was determined to be cocaine.

*Leyba v. State*, No. 71A04-9402-CR-53, slip op at 2-4 (Ind. App. Ct. Mar. 21, 1995) (internal footnotes and citations omitted). Leyba was charged with one count of dealing in cocaine and one count of conspiracy to deal in cocaine. *Id.* at 4. He was convicted by a jury and sentenced to 20 years on Count I, a 20-year suspended sentence on Count II, and eight years of probation. *Id.*

He appealed, raising the following arguments: (1) his conviction on both counts violated double jeopardy principles; (2) the trial judge erred in denying his motion for a mistrial after a comment made by one of the state's witnesses; (3) the trial judge erred in admitting certain rebuttal evidence; (4) his sentence was excessive under state law; and (5) the trial judge abused his discretion by failing to delay sentencing to investigate his claim that he was rendered incompetent by an incident that occurred during the voir dire process. *Id.* at 4-12. In March 1995, the Indiana Court of Appeals affirmed his conviction and sentence in all respects. *Id.* at 12. He sought transfer to the Indiana Supreme Court, but in May 1995, his petition was denied.[ECF No. 13-3 at 2.]

In August 1996, Leyba filed a *pro se* post-conviction petition in state court. [ECF No. 13-1 at 7.] He later withdrew the petition, and in August 1997 filed an amended petition. [*Id.* at 8.] After the state filed an answer, Leyba's motion for a change of judge was granted, and the public defender was appointed to represent him. [*Id.*] In October 1997, a stay of the case was entered after the public defender filed a "Notice of Present Inability to Investigate." [*Id.*]

2

Sometime thereafter Leyba was released from prison on probation, but in May 2004, the state filed a petition to revoke his probation. [*Id.* at 9.] He later admitted to violating the terms of his probation, and in August 2005, the court ordered him to serve two years of the previously suspended 20-year sentence on Count II. [*Id.*] Over the following year, Leyba filed various motions to correct and/or modify his sentence, all of which were denied. [*Id.* at 10.] In 2006 he was released, but in July 2007 the state filed another petition to revoke his probation. [*Id.*] He again admitted to violating the terms of his probation, and this time the court ordered him to continue on probation for a period of eight years. [*Id.*] As a condition of his probation he was also ordered to complete an anger management class. [*Id.*] In June 2008, the state filed a third petition to revoke his probation. [*Id.* at 12.] Leyba admitted to violating the terms of his probation by failing to report to the probation department, failing drug tests, and failing to complete the anger management class. [*Id.*] In June 2009, the court ordered him to serve the balance of the 20-year suspended sentence on Count II. [*Id.* at 13.]

In August 2009, he filed an amended petition for post-conviction relief.[1] [ECF No. 13-2 at 2-3.] After Leyba amended his petition twice and an evidentiary hearing was held, the court denied the petition. [*Id.* at 4.] Leyba appealed, but in February 2012, his appeal was dismissed with prejudice because he failed to file an appellate brief in accordance with state law. [ECF No. 27-4 at 2.] He did not seek review in the Indiana Supreme Court. [*See* ECF No. 27-1 at 2-4.]

---

[1] It appears the petition filed in August 1997 was technically still pending at that time; however, there is no indication from the docket that Leyba took action to have the stay lifted or to otherwise obtain a ruling on his request for post-conviction relief until 2009, when the court imposed the 20-year suspended sentence due to his multiple probation violations. [*See* ECF No. 13-1 at 8-10.]

In the midst of these state proceedings, Leyba sought federal habeas relief.[2] He raises two claims: (1) "judicial bias," based on misconduct by the various judges involved in his trial, post-conviction proceedings, and probation revocation proceedings, who allegedly joined in a "conspiracy" to deprive him of his rights; and (2) ineffective assistance of counsel, due to his counsel's failure to act on and correct the misconduct of the judges. [ECF No. 22.] The state argues that these claims are procedurally defaulted because Leyba did not properly raise them in one complete round of state review. [ECF No. 27.]

## II. ANALYSIS

Leyba's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Leyba filed his original federal petition in May 2011, but then filed several lengthy, somewhat confusing documents in which he appeared to be trying to assert additional claims. [*See* ECF No. 1, 7, 8, 10, 11, 15, 16.] The Court issued an order directing Leyba to file one amended petition containing all the claims he wished to assert in this proceeding. [ECF No. 20.] He complied with that order. [ECF No. 22.] The amended petition has been fully briefed [ECF Nos. 27, 29] and is now ripe for decision.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011).

Before considering the merits, the Court must ensure that the state courts have been given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, either on direct appeal or on post-conviction review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. Under the procedural default doctrine, a federal court is precluded from reaching the merits of a claim when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state

5

procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Routine matters such as a petitioner's *pro se* status or lack of knowledge of the law do not establish cause to excuse a procedural default. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010) (petitioner's *pro se* status did not excuse his procedural default); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (petitioner's *pro se* status and lack of education did not excuse his procedural default).

A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that

was not presented at trial," *Id.*, and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Here, the record indicates that Leyba raised judicial bias and ineffective assistance claims in the post-conviction proceedings, but he did not perfect an appeal after his petition was denied. [*See* ECF Nos. 27-2, 27-4.] The Indiana Court of Appeals dismissed his appeal with prejudice because he did not file an appellate brief in accordance with INDIANA APPELLATE RULE 45(D). [ECF No. 27-4.] His failure to comply with this state procedural rule provides an adequate and independent state ground that blocks federal review. *Coleman*, 501 U.S. at 735; *Szabo v. Walls*, 313 F.3d 392 (7th Cir. 2002). Additionally, Leyba committed a second level of default when he did not seek review in the Indiana Supreme Court after his appeal was dismissed. *Boerckel*, 526 U.S. at 848; *see also* IND. APP. R. 57(b)(4) (transfer may be sought from an order dismissing an appeal). Therefore, Leyba did not properly present his claims in one complete round of state review, and they cannot be reached on the merits unless he provides grounds for excusing his two levels of default.

Leyba filed a traverse and hundreds of pages of documents after the state filed its return, but the bulk of these filings focus on the merits of his judicial bias claim. [*See* ECF No. 29, 30, 31.] In one of his filings, he mentions in passing the dismissal of his post-conviction appeal, but he appears to be under the mistaken impression that the appeal was dismissed because the trial court clerk did not transmit the transcripts to the Indiana Court of Appeals. [*See* ECF No. 30 at 37.] This is inaccurate, as the appellate court's order makes clear that the dismissal was based on Leyba's failure

7

to file an appellate brief.[3] [ECF No. 27-4.] Leyba has not provided grounds for excusing this procedural default. Nor does he acknowledge or provide grounds for excusing his second level of default, which occurred when he failed to seek review in the Indiana Supreme Court. *See Boerckel*, 526 U.S. at 848.

While not acknowledging his defaults in the post-conviction proceedings, Leyba appears to argue that he properly exhausted the judicial bias claim on direct review. [ECF No. 30 at 18.] Although unclear, Leyba appears to believe that claim five on direct appeal—that the trial judge abused his discretion in not delaying sentencing—is the same as the judicial bias claim raised here. [*Id.*] The Court disagrees. To properly exhaust, a petitioner must "present both the operative facts and the legal principles that control each claim to the state judiciary," *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007), including alerting the state court to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33. Leyba does not satisfy either prong.

As to the operative facts, his claim on direct appeal was that the trial judge should have delayed sentencing to investigate his claim that he was rendered incompetent during the voir dire process by a comment the judge made.[4] *Leyba*, No. 71A04-9402-CR-53, slip op. at 13. In his federal petition, Leyba claims that the trial judge and two judges who presided over the post-conviction and

---

[3] The state appellate docket reflects that the clerk's record, including the transcript, was completed and filed on August 11, 2011. [ECF No. 27-2 at 1.]

[4] The record reflects that during voir dire, the trial judge encountered an unwilling juror who "felt herself indispensable to her other obligations." *Leyba*, No. 71A04-9402-CR-53, slip op. at 12. The judge responded by telling a hypothetical story about the juror getting hit by a car and sustaining two broken legs, which would require others to "get along in the juror's absence." *Id.* Unbeknownst to the judge, Leyba's son was in the hospital at that time after being hit by a car and seriously injured. *Id.* Leyba first alerted the judge to this issue at sentencing, when he reported that he had become "so unhinged by the story that he was rendered incompetent to stand trial." *Id.* at 13. The judge "apologized profusely" and stated that he had been unaware of Leyba's son's condition. *Id.*

8

probation revocation proceedings were involved in a conspiracy to deprive him of his rights; he believes that as a result of their "conflict of interest" they lacked authority to enter orders in his case, including the order sentencing him to serve the remainder of his 20-year suspended sentence.[5] [*See* ECF Nos. 22 at 5-11.] Even though both claims encompass wrong-doing by the trial judge, they clearly do not involve the same operative facts. *See, e.g., Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (even though petitioner claimed in state proceedings that his attorney was ineffective in failing to challenge a tainted identification, he did not properly exhaust a free-standing claim based on the tainted identification, since operative facts surrounding the two claims were distinct); *Stevens*, 489 F.3d at 894 (where petitioner complained about one aspect of counsel's performance in state proceeding but not the specific error he was challenging in federal habeas petition, claim was procedurally defaulted).

As to the legal basis of the claims, on direct appeal Leyba argued that the judge erred in not granting a continuance under IND. CODE § 35-38-1-5, which provides for a delay in sentencing when sufficient cause is shown. *Leyba*, No. 71A04-9402-CR-53, slip op. at 11-12. Although not entirely clear, Leyba's judicial bias claim contained in his federal petition appears to based on a Fourteenth Amendment due process or equal protection violation. [*See* ECF No. 22 at 11.] His claim could not possibly be premised on state law, however, because a violation of state law does not provide a cognizable basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

---

[5] The bulk of his claim centers on the actions of the Judge Woodward-Miller, a former prosecutor, who presided over the third probation revocation proceeding. [*See* ECF No. 22 at 5-16.] As to the trial judge, Judge Frese, Leyba appears to claim that he inappropriately entered rulings in the post-conviction and probation revocation proceedings after granting Leyba's motion for a change of judge. [ECF No. 22 at 6-7; *see also* ECF No. 13-1 at 8.] As a general matter, errors committed on post-conviction review would not provide a cognizable basis for granting federal habeas relief. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997).

(federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws). Accordingly, these two claims do not involve the same legal principles, and they are not the same claims for exhaustion purposes.

Even if the two claims could be deemed the same, there is an additional reason why the Court could not reach the merits. On direct appeal, the Indiana Court of Appeals concluded that Leyba's claim regarding the judge's failure to delay sentencing was waived because he did not request a continuance at the time of sentencing. *Lebya*, No. 71A04-9402-CR-53, slip op. at 12. Waiver constitutes an adequate and independent state procedural ground barring federal review. *See Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009) ("Where, as here, the state court declined to review an issue that was not properly preserved, 'the state court decision rests upon a ground that is both independent of the federal question and adequate to support the judgment.'"). Accordingly, this claim is not preserved for federal review in any event. For these reasons, the petition must be dismissed with prejudice.

Pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Leyba's claims are procedurally defaulted, and he has not provided any meritorious basis for excusing his two levels of default. The Court finds no basis to conclude that

jurists of reason could debate the outcome of the petition or find a reason to encourage Leyba to proceed further. Accordingly, the Court declines to issue Leyba a certificate of appealability.

III. CONCLUSION

For the reasons set forth above, the amended petition [ECF No. 22] is DISMISSED WITH PREJUDICE and the petitioner is DENIED a certificate of appealability.

SO ORDERED.

ENTERED: January 29, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court